IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

SHAIDON BLAKE aka SHAMVOY SMITH  *

Plaintiff                                           *

v                                                   *           Civil Action No.  AW-09-2367

GARY MAYNARD, *et al.*                *

Defendants                                      *
                                                     ***

## **MEMORANDUM**

Pending is Plaintiff's Motion for Summary Judgment and Defendants' Motion to Dismiss or for Summary Judgment. Paper No. 17 and 18. Also pending is Plaintiff's Motion to Compel Discovery and Defendant Consolidation.[1] Paper No. 16. Plaintiff has opposed Defendants' Motion to Dismiss or for Summary Judgment. Paper No. 26. Upon review of the papers filed, the Court finds a hearing in this matter unnecessary. *See* Local Rule 105.6 (D. Md. 2010).

### **Background**

On June 21, 2007, Plaintiff was incarcerated at the Maryland Reception Diagnostic and Classification Center (MRDCC) and was being escorted while handcuffed from Unit 7C by Sergeant Michael Ross when he was approached by Lieutenant James Madigan. Paper No. 1 at p. 6. Plaintiff claims Madigan pushed him while he was walking down a flight of stairs. *Id*. Plaintiff states he told Madigan he did not have to push him since his actions were unprovoked. *Id*.

Madigan left Plaintiff in the hallway, instructing him to stand with his right shoulder against the wall, while Madigan went into another room to speak to Corporal Candice Fields, the

---

[1] Plaintiff states in his Motion to Compel that counsel has not complied with his requests for production of documents. Paper No. 16. It appears that in the interim counsel did provide the documents Plaintiff requested, as stated in Defendants' opposition to the motion to compel. Paper No. 19. Plaintiff has filed the requested documents as exhibits to his Response in Opposition. Paper No. 26. Thus, his Motion to Compel shall be denied.

tier officer. Plaintiff explains that he was being watched by Ross and that he complied with the order given by Madigan. He claims Madigan left the office, walked over to Plaintiff, and began punching him in the face without warning or provocation. Plaintiff states Madigan had a circular key ring gripped in his hands while he "pounded me in the left side of my face from over head approximately 7 times." *Id*. at p. 6. Plaintiff states the force of the blows drove his head into the wall several times and Ross never made any attempt to intervene on Plaintiff's behalf. After Madigan stopped punching Plaintiff he began yelling at him to "take a knee" while attempting to throw Plaintiff to the ground. Plaintiff claims that a correctional officer assigned to a post in the hallway called for assistance during the assault and Captain Vincent responded to the call. Vincent separated Madigan and Ross from Plaintiff and escorted Plaintiff to the medical unit. *Id*. As a result of the assault Plaintiff states he suffers from psychological damage as well as permanent physical injuries for which he receives medical care. *Id*. at p. 7.

Defendants do not deny Madigan struck Plaintiff. Paper No. 18. The tier officer, Candis Fields, prepared an incident report describing the events, stating in relevant part:

> Upon beginning top tier evening recreation and phone list, inmate Blake, Shidon . . . turned off the pod's television and stated, "which one of you told her to run a phone list? We run our own phone list up here. We men." Inmate Blake . . . then stated to me . . . 'you need to fall back and let us run this. We can run our own phone list.' I then stated to inmate Blake . . . 'as the pod officer I will run a phone list to ensure that everyone gets a fair turn on the phone.' Inmate Blake . . . then stated to another inmate 'she goin cause somebody to get hurt.' I then informed Sgt. Michael Ross and Lt. James Madigan of my observations and inmate's statements. At 7:15 p (sic) Sgt. Michael Ross and Sgt. Tawn Davis entered 7 Charlie and secured inmate Blake . . . into his cell without force or incident. At 8:10 p Lt. James Madigan called 7 Charlie and I . . . requested that inmate Blake . . . be moved off of unit 7 Charlie due to several inmates stating that inmate does not allow others to use the telephone unless he approves. Inmates also stated that Blake . . . intimidates other inmates by stating that he's head of the Bloods. Lt. Madigan then stated to me . . . 'well the only way he'll be moved is if you write a ticket on him with charges 100, 104, 312, [and] 405.' I . .

2

> .then proceeded to write a notice of infraction with these listed charges to ensure that inmate Blake . . . was no longer a threat or concern to other housed inmates. At 9:40 p, Lt. Madigan came onto 7 Charlie along with Sgt. Michael Ross and requested my handcuffs. I then handed him the handcuffs and we all proceeded to cell 7122. Lt. Madigan then ordered Blake . . . to 'pack up.' Inmate then inquired 'why?' Lt. Madigan stated 'you're Mr. Tough Guy trying to take over a unit. Let's go.' Inmate then packed up his things and I . . . handed Lt. Madigan my podset keys #241 and proceeded to the officer's level of the unit. Lt. Madigan and Sgt. Ross then secured inmate by means of handcuffs and proceeded down the steps. Inmate Blake . . . began to be slowful (sic) coming down the steps being escorted by Sgt. Ross when Lt. **Madigan began to shove inmate in a forceful way down the steps**. Inmate Blake . . . began to shout obsene (sic) remarks to Lt. Madigan. Inmate continued these remarks until reaching the threshold of 7 Charlie where Lt. **Madigan with keyset #241 in a closed fist struck inmate Blake . . . repeatedly on the right side of his jaw with his right hand.** Inmate Blake . . . then became very agitated stating 'let me go, you hit me in my fucking mouth. Take these cuffs off.' Inmated stated this statement repeatedly with Sgt. Ross trying to remain in control of inmate. At 9:55 p, Cpl Latia Woodard assigned to 7 Corridor made a radio transmission 'signal 13, 7 corridor' due to Sgt. Ross and Lt. Madigan unable to gain control of inmate Blake.

Paper No. 18 at Ex. 1, pp. 18—21 (emphasis supplied). Other reports written by Latia Woodard and Sgt. Ross verify that Madigan struck Plaintiff, but do not confirm Madigan did so with the keyset clenched in his fist. *Id*. at pp. 17, 22—27. Woodard's report adds that she attempted to intervene by telling Madigan to let Plaintiff go, to no avail. *Id*. at p. 17. In addition she states Madigan told her to mace Plaintiff after he had punched Plaintiff in the jaw several times and they were walking toward the elevator. *Id*. Woodard states that she did not comply with the request to mace Plaintiff and instead called a signal 13 as requested by Sgt. Ross. *Id*.

Ross's report verifies that Plaintiff was not resistant to being escorted from his cell, but he did not want Madigan to touch him and repeatedly made moves in an attempt to get Madigan to let go of him. *Id*. at pp. 23 – 26. Additionally, it is clear from Ross's report that at no time was Madigan's intervention necessary as Plaintiff was not resistant to being escorted by Ross.

3

Ross verifies that Madigan pushed Plaintiff while he was on the stairs and that he hit Plaintiff repeatedly in the face. *Id*. Ross states under oath that when Madigan asked Woodard to mace Plaintiff, he told Woodard to call for assistance and told Plaintiff he was taking him to the floor. *Id*. at Ex. 2. Ross explains that Plaintiff agreed to go down to the floor but when he tried to pull Plaintiff to the floor their feet became entangled and Ross, Madigan and Plaintiff fell to the floor. *Id*. It was during this fall that Ross sustained contusions to his knees. *Id*.

Madigan claims he grabbed Plaintiff's right arm because he was trying to break free from Ross's grasp. Paper No. 18 at Ex. 1, p. 5. He further claims that Plaintiff "increased his resistance, shaking his body fiercely, causing us to lose our grasp" and that Plaintiff "lunged forward at me with his upper body." *Id*. Madigan then admits striking Plaintiff's face four times for purposes of gaining control over him and because he felt his safety was in jeopardy. The report from Madigan neglects to mention the request for mace[2] and simply recalls that Woodard called a signal 13. *Id*. Defendants uniformly claim that Plaintiff was taken to the medical unit where he declined treatment.

An investigation into the use of force was conducted and Captain Vincent found that:

> Though Lt. James Madigan wrote in his report that he feared for his safety, I conclude that the risk to his safety was negligible at best. I further conclude that the situation was escalated by Lt. Madigan's rigidness not to heed the request, then demand, of the inmate as well as Sergeant Michael Ross's comment that he, Sgt. Ross, had the inmate under control. In short, the event could have been avoided. Therefore, I recommend that Lt. James Madigan receive fifteen days suspension or forfeiture of the 120 hours of annual leave and/or mandatory use of force training.

Paper No. 18 at Ex. 1, p. 4. Vincent's findings were confirmed by both the Security Chief and the Warden who found the use of force was unnecessary and therefore excessive. *Id*. at p. 30.

---

[2] Madigan admitted to requesting Woodard to mace Plaintiff when he was interviewed for an internal investigation report after he had resigned his position. Paper No. 26 at Ex. E, p. 3.

4

Madigan later signed a Disciplinary Action Settlement Agreement which required his resignation effective July 13, 2007. Paper No. 26 at Ex. A.

**Standard of Review**

Summary Judgment is governed by Fed. R. Civ. P. 56(c) which provides that:

> [Summary judgment] should be rendered if the pleadings, the discovery and disclosure materials on file, and any affidavits, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law.

The Supreme Court has clarified that this does not mean that any factual dispute will defeat the motion:

> By its very terms, this standard provides that the mere existence of *some* alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no *genuine* issue of *material* fact.

*Anderson v. Liberty Lobby, Inc.*, 477 U. S. 242, 247-48 (1986) (emphasis in original).

AThe party opposing a properly supported motion for summary judgment >may not rest upon the mere allegations or denials of [his] pleadings,= but rather must >set forth specific facts showing that there is a genuine issue for trial.=@ *Bouchat v. Baltimore Ravens Football Club, Inc.*, 346 F.3d 514, 525 (4th Cir. 2003) (alteration in original) (quoting Fed. R. Civ. P. 56(e)). The court should Aview the evidence in the light most favorable to....the nonmovant, and draw all inferences in her favor without weighing the evidence or assessing the witness= credibility.@ *Dennis v. Columbia Colleton Med. Ctr., Inc.*, 290 F.3d 639, 644-45 (4th Cir. 2002). The court must, however, also abide by the Aaffirmative obligation of the trial judge to prevent factually unsupported claims and defenses from proceeding to trial.@ *Bouchat*, 346 F.3d at 526 (internal quotation marks omitted) (quoting *Drewitt v. Pratt*, 999 F.2d 774, 778-79 (4th Cir. 1993), and citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 323-24 (1986)). "The party opposing a properly

5

supported motion for summary judgment may not rest upon mere allegations or denials of [its] pleading, but must set forth specific facts showing that there is a genuine issue for trial." *Rivanna Trawlers Unlimited v. Thompson Trawlers, Inc.*, 840 F.2d 236, 240 (4th Cir. 1988).

**Analysis**

Whether force used by prison officials was excessive is determined by inquiring if Aforce was applied in a good-faith effort to maintain or restore discipline, or maliciously and sadistically to cause harm.@ *Hudson v. McMillian*, 503 U. S. 1, 6-7 (1992). This court must look at the need for application of force; the relationship between that need and the amount of force applied; the extent of the injury inflicted; the extent of the threat to the safety of staff and inmates as reasonably perceived by prison officials; and any efforts made to temper the severity of the response. *See Whitley v. Albers*, 475 U. S. 312, 321 (1986). The absence of significant injury alone is not dispositive of a claim of excessive force. *Wilkens v. Gaddy*, __ U.S. __, 130 S. Ct. 1175 (2010). The extent of injury incurred is one factor indicative of whether or not the force used was necessary in a particular situation, but if force is applied maliciously and sadistically liability is not avoided simply because the prisoner had the good fortune to escape serious harm. *Id*.

The undisputed evidence establishes that the force used against Plaintiff by Madigan was excessive and unnecessary. Disciplinary action was taken against Madigan resulting in his removal from employment with the Department of Public Safety and Correctional Services. In addition, Plaintiff submits medical records from July 2007 to January 2010 which indicate he suffered nerve damage to his face, causing headaches for which he is prescribed neurontin. Paper No. 26 at Ex. S – KK. Defendants have not presented evidence to refute the medical

records submitted by Plaintiff; thus, it is undisputed that he suffered serious harm as a result of the force used.

The question remains, who is responsible for Plaintiff's injuries? Defendants suggest they are entitled to avail themselves of a qualified immunity defense because they did not violate any clearly established legal rule. Paper No. 18. When considering whether a defendant is entitled to avail himself of a qualified immunity defense, this Court must consider whether, at the time of the claimed violation, this right was clearly established and "whether a reasonable person in the official's position would have known that his conduct would violate that right." *Rish v. Johnson*, 131 F. 3d 1092, 1095 (4th Cir. 1997) *citation omitted*. In this case Plaintiff was restrained, at least partially cooperative, and he was punched in the face at least four times. A reasonable person would have known that the conduct in question was unlawful. Indeed, other officers who witnessed the events did not view Madigan's conduct as reasonable under the circumstances. A qualified immunity defense is unavailable in this case.

It is easily concluded that Madigan was responsible for the excessive force used against Plaintiff, however, Madigan has never been served with the Complaint. Recent attempts to serve Madigan at his last known home address failed; the summons was returned unexecuted, marked "return to sender unable to forward." Paper No. 29. Thus, Madigan has not had the opportunity to defend against the Complaint and judgment may not be entered against him in the procedural posture of this case.³

Plaintiff assigns blame to Ross for failing to intervene on his behalf when Madigan was assaulting him. Paper No. 1 and 26. Defendants allege that to the extent Ross failed to intervene on Plaintiff's behalf, such failure is simply negligence and does not state a constitutional claim. It is clear from the evidence submitted by both parties that Ross was in the best position of any

---

³ Plaintiff's Motion for Default Judgment (Paper No. 27) must, therefore, be denied.

other officers on the scene to determine whether Plaintiff's conduct required a use of force against him. According to his statement, Ross told Madigan that he had control of Plaintiff, seemingly to discourage Madigan from his continued efforts to grab Plaintiff. In addition, Ross told Woodard to radio for help and attempted to get Plaintiff to the floor. Whether Ross's actions were sufficient in light of the circumstances is a genuine dispute of material fact precluding summary judgment as to the claims against Ross.

Defendants Maynard and Stouffer are supervisory officials against whom no allegations of direct involvement or wrongdoing has been claimed. Liability of supervisory officials "is not based on ordinary principles of respondeat superior, but is instead premised on 'a recognition that supervisory indifference or tacit authorization of subordinates' misconduct may be a causative factor in the constitutional injuries they inflict on those committed to their care.' " *Baynard v. Malone*, 268 F.3d 228, 235 (4th Cir.2001) *citing Slakan v. Porter*, 737 F.2d 368, 372 (4th Cir.1984). Supervisory liability under § 1983 must be supported with evidence that: (1) the supervisor had actual or constructive knowledge that his subordinate was engaged in conduct that posed a pervasive and unreasonable risk of constitutional injury to citizens like the plaintiff; (2) the supervisor's response to the knowledge was so inadequate as to show deliberate indifference to or tacit authorization of the alleged offensive practices; and (3) there was an affirmative causal link between the supervisor's inaction and the particular constitutional injury suffered by the plaintiff. *See Shaw v. Stroud*, 13 F.3d 791, 799 (4th Cir.1994). Plaintiff has pointed to no action or inaction on the part of Stouffer and Maynard that resulted in the constitutional injury suffered. Although he suggests that Madigan was imbalanced and should not have been hired, there is no evidence to support that theory. Moreover, once Madigan's conduct was made known to supervisory officials he was placed on administrative leave and

8

ultimately removed from the job. Thus, this is not a case where gross misconduct was overlooked and thereby tacitly authorized. Stouffer and Maynard are entitled to summary judgment in their favor.

**Conclusion**

Summary judgment will be granted in favor of Stouffer and Maynard, but denied as to Ross. Plaintiff's Motion for Summary Judgment shall be denied without prejudice. In light of Plaintiff's incarceration in another state, counsel shall be appointed to represent Plaintiff for all purposes, including obtaining service on Madigan, conducting discovery, filing motions, and proceeding to trial. A separate Order follows.


September 9, 2010    _____//s//_____
Date                                     Alexander Williams, Jr.
                                         United States District Judge