**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND
SOUTHERN DIVISION**

| | |
|---|---|
| SHAIDON BLAKE, | |
| Plaintiff, | |
| v. | Civil Action No. 8:09-cv-02367-AW |
| GARY MAYNARD *et al.*, | |
| Defendants. | |

## MEMORANDUM OPINION

Plaintiff Shaidon Blake brings this action against Defendants Michael Ross and James Madigan. Plaintiff asserts § 1983 claims for excessive force and deliberate indifference. Outstanding are Plaintiff's Motion to Strike and Defendant Michael Ross's Motion for Summary Judgment. The Court has reviewed the entire record and finds no hearing necessary. For the reasons that follow, the Court **DENIES** Plaintiff's Motion to Strike and **GRANTS** Defendant Ross's Motion for Summary Judgment.

## I.    FACTUAL AND PROCEDURAL BACKGROUND

This case arises from a beating Plaintiff sustained at the hands of a prison guard. Plaintiff Shaidon Blake, a/k/a Shamvoy Smith, is an inmate of the Maryland Division of Correction (DOC). Defendants James Madigan and Michael Ross are prison guards and were involved in the series of events leading to the instant dispute. Although Blake sued other individuals in his initial Complaint, the Court has erstwhile dismissed them. *See* Doc. No. 32 at 8–9.

On June 21, 2007, Blake received a notice of infraction based on allegations that he interrupted the orderly use of the telephone in Maryland Reception, Diagnostic, and

Classification Center (MRDCC) Unit 7C. In connection with this incident, Madigan and Blake went to Blake's cell, handcuffed him, and escorted him out of his cell. Ross held Blake by the arm and Blake offered no resistance. Ross and Blake proceeded to the concrete staircase that leads to the lower part of Unit 7C with Madigan trailing behind. The trio reached the staircase and started to descend, whereupon Madigan shoved Blake from behind. Ross thereupon told Madigan that he had Blake under control.

Eyewitness accounts diverge sharply at this point. In essence, Defendants contend that the trio stopped moving toward the segregation unit and Madigan "unexpectedly punched Mr. Blake in the face several times in quick succession." Doc. No. 94-1 at 6. In contrast, Blake asserts that there was a "clear buildup to the assault at issue." Doc. No. 96 at 4. After this alleged buildup, Blake contends that Madigan punched him in the face several times with a "fist clenched over a key ring." *Id.* Blake also asserts that there were intermittent pauses during the assault.

Madigan then ordered the hallway officer, Latia Woodard, to mace Blake, which she refused. Instead, Woodard issued a "Signal 13" code over the radio, thereby summoning the assistance of other correctional officers.

The Parties' stories diverge at this point as well. The Parties agree that, in one way or the other, Ross took Blake to the ground. Defendants assert that Ross and Madigan "attempted to bring Mr. Blake to the floor" and that the three tripped and fell during the process. Doc. No. 94-1 at 7. Ross's alleged motive in taking Blake to the floor was to "demonstrate control over Mr. Blake so that the other arriving officers would not continue to escalate the use of force against Mr. Blake." *Id.* For his part, Blake insists that Madigan and Ross picked him up

and slammed him violently to the ground on his head. Doc. No. 96 at 5. Blake further asserts that

Ross "dropped his knee on Blake's chest." *Id.*

Thereafter, Blake was taken to the medical unit. Blake received a preliminary

examination, after which he returned to his cell. The incident was referred to the Internal

Investigative Unit (IIU) of the Department of Public Safety and Correctional Services (DPSCS).

The IIU conducted an investigation and completed a comprehensive report. The IIU report

concluded, inter alia, that Madigan used excessive force during the incident described above.

Consequently, Madigan was charged with various violations, a process that culminated in his

entering into a settlement agreement pursuant to which he resigned in lieu of being fired.

On September 8, 2009, Blake filed a pro se Complaint asserting a § 1983 claim based on

Madigan's attack and the surrounding events. Doc. No. 1. On February 4, 2010, Ross, among

others, filed a Motion to Dismiss or, in the Alternative, for Summary Judgment (Motion to

Dismiss).[1] On September 9, 2012, the Court issued a Memorandum Opinion that, while granting

the Motion in relation to other Defendants, denied it as to Ross. Doc. No. 32. In this Opinion, the

Court rejected the contention that Ross was entitled to qualified immunity, concluding that

genuine issues of material fact existed concerning whether he had unconstitutionally failed to

intervene. *See id.* at 7–8.

On August 2, 2011, Ross filed a Consent Motion for Leave to Amend his Answer to the

Complaint (Consent Motion to Amend Answer). Doc. No. 66. Ross's proposed amended answer

asserted some new defenses, including that Ross had failed to exhaust administrative remedies

under the Prison Litigation Reform Act (PLRA). Later that month, despite having consented to

Ross's amendment, Blake filed a Motion to Strike Certain of Ross's Affirmative Defenses

---

[1] Madigan was not in the case at this point. Madigan has since answered. Doc. No. 53. Madigan has not
moved for summary judgment or otherwise sought to have the action dismissed.

(Motion to Strike Certain Defenses), arguing that Ross waived the right to raise them by failing to do so earlier in the proceeding. Doc. No. 74. Ross subsequently lodged an Amended Complaint via consent motion, thus mooting his Motion to Strike Certain Defenses. *See* Doc. Nos. 78-1, 85. Ross answered the Amended Complaint. Doc. No. 84. Ross's answer restates the affirmative defense of failing to exhaust administrative remedies under the PLRA.

On October 24, 2011, Blake filed a Motion to Strike Defendant Ross's Fifth Affirmative Defense (Motion to Strike). Doc. No. 87. In this Motion, as in the Motion to Strike Certain Defenses, Blake seeks to strike Ross's PLRA defense on a waiver theory.

On January 9, 2012, Ross filed a Motion for Summary Judgment. Doc. No. 94. Ross presses two primary arguments in this Motion. The first is that Blake failed to exhaust administrative remedies. The second is that the evidence is insufficient to support Blake's § 1983 excessive force and deliberate indifference claims. Blake responded to Ross's Motion for Summary Judgment on February 2, 2012. Doc. No. 96. Ross failed to file a reply brief.

## II.   STANDARD OF REVIEW

Summary judgment is appropriate only "if the movant shows that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *see Celotex Corp. v. Catrett*, 477 U.S. 317, 323–25 (1986). The Court must "draw all justifiable inferences in favor of the nonmoving party, including questions of credibility and of the weight to be accorded to particular evidence." *Masson v. New Yorker Magazine, Inc.*, 501 U.S. 496, 520 (1991) (citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986)). To defeat a motion for summary judgment, the nonmoving party must come forward with affidavits or similar evidence to show that a genuine issue of material fact exists. *See Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986). A disputed fact

presents a genuine issue "if the evidence is such that a reasonable jury could return a verdict for

the nonmoving party." *Anderson*, 477 U.S. at 248. Material disputes are those that "might affect

the outcome of the suit under the governing law." *Id.*

Although the Court should believe the evidence of the nonmoving party and draw all

justifiable inferences in his or her favor, the nonmoving party cannot create a genuine dispute of

material fact "through mere speculation or the building of one inference upon another." *See Beal*

*v. Hardy*, 769 F.2d 213, 214 (4th Cir. 1985). Further, if a party "fails to properly support an

assertion of fact or fails to properly address another party's assertion of fact as required by Rule

56(c), the court may consider the fact undisputed for purposes of the motion." Fed. R. Civ. P.

56(e)(2). Finally, hearsay statements or conclusory statements with no evidentiary basis cannot

support or defeat a motion for summary judgment. *See Greensboro Prof'l Firefighters Ass'n,*

*Local 3157 v. City of Greensboro*, 64 F.3d 962, 967 (4th Cir. 1995).

## III.   LEGAL ANALYSIS

## A.   Motion to Strike

Blake moves the Court to strike Ross's PLRA defense. Blake argues that Ross waived

this defense by not raising it in a timely fashion. Alternatively, Blake urges the Court to strike

the defense as "insufficient," averring that the defense fails as a matter of law. As the analysis in

Part III.B, *infra*, shows, this defense does not fail as a matter of law. Therefore, the Court

addresses only whether Ross waived the right to raise this defense.

Ross responds that he properly raised the PLRA defense because he did so in response to

Blake's Amended Complaint. Ross also asserts that Blake has failed to show unfair surprise or

prejudice.

The Court agrees with Ross. The argument that Ross failed to seasonably raise the PLRA defense is somewhat shortsighted. On August 2, 2011, Ross filed his *Consent* Motion to Amend Answer. Doc. No. 66. The Consent Motion to Amend Answer explicitly stated that Ross's proposed amended answer asserted some new defenses, *id.* ¶ 2, and included as an attachment a proposed amended answer. The proposed amended answer expressly stated that Blake's "claims are barred by failure to properly exhaust all administrative remedies . . . as required by the [PLRA] . . . ." Doc. No. 66-1 ¶ 5.

If Blake deemed it improper to raise the PLRA defense, the appropriate course of action would have been to file a partial opposition to Ross's motion for leave to amend his answer. The record does not reflect that Blake did so. Rather, Blake waited for roughly three weeks and then filed his Motion to Strike Certain Defenses.

Blake later filed a Consent Motion to Amend his Complaint. Doc. No. 78. Although the changes the Amended Complaint makes to the Complaint are largely cosmetic, an amended pleading generally supersedes the original pleading, thereby rendering the latter inoperative. *See Young v. City of Mount Ranier*, 238 F.3d 567, 572 (4th Cir. 2001) (citations and internal quotation marks omitted). Therefore, considering that Blake amended his Complaint with at least constructive knowledge that Ross sought to assert the PLRA defense, the Amended Complaint became the operative pleading. Furthermore, the Federal Rules of Civil Procedure obligate a defendant to "state [in answers] . . . its defenses to each claim asserted against it." Fed. R. Civ. P. 8(b)(1)(A); *see also* Fed. R. Civ. P. 12(b)("Every defense to a claim for relief in any pleading must be asserted in [an answer] . . . ."). Accordingly, because the Amended Complaint was the controlling pleading, the Rules required Ross to raise his PLRA defense in his answer to the Amended Complaint. For these reasons alone, Ross has timely raised his PLRA defense.

Contrary to his contentions, moreover, Blake has not shown unfair surprise or prejudice on account of Ross's assertion of the PLRA defense. Although the Court agrees that Ross could have raised the PLRA defense at a much earlier stage in the proceeding, the Parties had yet to take depositions and approximately three-and-a-half months remained for discovery when Ross first raised the PLRA defense. *See* Doc Nos. 66, 88. Furthermore, Blake does little more than to vaguely state that Ross's assertion of the defense has unfairly surprised or prejudiced him. *See, e.g.*, Doc. No. 87 ¶ 13; Doc. No. 92 at 1–2; Doc. No. 96 at 22–23. Yet, as Ross aptly notes,

> [T]he prejudice Mr. Blake now complains of is nothing more than the prejudice that always accompanies the role of [a] plaintiff faced with a timely affirmative defense asserted in response to a complaint. Unlike Mr. Blake's assertions, affirmative defenses are not automatically waived whenever they work prejudice against the plaintiff; such a rule would require waiver in every case.

Doc. No. 91 at 4.

None of the scant authority to which Blake cites salvages his waiver theory. The only controlling case on which Blake appears to rely is *Brinkley v. Harbour Recreation Club*, 180 F.3d 598, 612 (4th Cir. 1999). The *Brinkley* court held that "there is ample authority in this Circuit for the proposition that absent unfair surprise or prejudice to the plaintiff, a defendant's affirmative defense is not waived when it is first raised in a pre-trial dispositive motion." *Id.* Here, Blake has failed to make the requisite showing of unfair surprise or prejudice. Moreover, Ross first raised the PLRA defense in his answer to Blake's Amended Complaint, not in a dispositive motion. The other case is an unpublished opinion from the Western District of Virginia. *See Carr v. Hazelwood*, Civil Action No. 7:07cv00001, 2008 U.S. Dist. LEXIS 81753 (W.D. Va. Oct. 8, 2008). Beyond being nonbinding, *Carr* is unpersuasive because the court

based its finding of waiver in no small part on the fact that the defendant first raised its PLRA defense in fairly close proximity to trial. *See Carr*, 2008 U.S. Dist. LEXIS 81753, at *12–13. In this case, by contrast, the Court has scheduled no trial and Ross first raised the PLRA defense almost one-half year before the dispositive motions deadline. *See* Doc. Nos. 66, 93. Hence Blake's authorities are unconvincing.

For the foregoing reasons, the Court denies Blake's Motion to Strike.

**B.     Motion for Summary Judgment**

As noted, Ross mounts a twofold attack in his Motion for Summary Judgment. The Court need not, however, consider Ross's second argument; namely, whether the evidence is sufficient to support Blake's § 1983 excessive force and deliberate indifference claims. This is because Ross's first argument—that Blake failed to exhaust administrative remedies—is meritorious.

"In response to an ever-growing number of prison-condition lawsuits that were threatening to overwhelm the capacity of the federal judiciary, Congress in 1996 passed the [PLRA]." *Anderson v. XYZ Corr. Health Servs., Inc.*, 407 F.3d 674, 676 (4th Cir. 2005). "The PLRA imposes a number of restrictions on an inmate's ability to initiate civil litigation." *Id.* One such requirement entails exhausting administrative remedies. *See id.* at 676–77. That is, "[t]he [PLRA] generally requires a prisoner plaintiff to exhaust administrative remedies before filing suit in federal court." *Thomas v. Bell*, Civil Action Nos. AW-08-2156, AW-08-3487, AW-09-1984, AW-09-2051, 2010 WL 2779308, at *3 (D. Md. July 7, 2010). "42 U.S.C. § 1997e(a) provides that '[n]o action shall be brought with respect to prison conditions under § 1983 of this title, or any other Federal law by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted.'" *Id.* (alteration in original). "There is no doubt that the PLRA's exhaustion requirement is mandatory." *Anderson*,

407 F.3d at 676–77 (citing *Porter v. Nussle*, 534 U.S. 516, 532 (2002)); *see also Booth v. Churner*, 532 U.S. 731, 741 n.6 (2001) (suggesting that exhaustion under the PLRA is mandatory even where it portends futility).

Maryland law implements an inmate grievance process that generally consists of three levels. The first level is called the Administrative Remedy Procedure (ARP). The ARP "is a formal way to resolve complaints or problems that an inmate has been unable to resolve informally." Md. Div. of Corr., Inmate Handbook 30 (2007), http://www.dpscs.state.md.us/publicinfo/publications/pdfs/2007_Inmate_Handbook.pdf. Usually, the ARP process involves filing a request for administrative remedy with the warden of the institution in which the inmate is incarcerated. *See id.*; *Chase v. Peay*, 286 F. Supp.2d 523, 529 n.10 (D. Md. 2003). The second step, for its part, entails appealing the warden's decision to the Commissioner of Correction (Commissioner). *See id.*; *Chase*, 286 F. Supp.2d at 529 n.10. The third, and final, step occasions appealing the Commissioner's decision to the Inmate Grievance Office (IGO). *See id.*; *Chase*, 286 F. Supp.2d at 529 n.10.

This is not to imply, however, that instituting a grievance with the IGO invariably depends on satisfaction of the first two steps. Quite the contrary, Maryland law permits prisoners in the custody of the Division of Correction (DOC) to file a grievance directly with the IGO. *See* Md. Code Ann., Corr. Servs. § 10-206(a). This authorization comes with two central caveats. First, grievants must submit their complaints "within the time and in the manner required by regulations adopted by the Office." *Id.* Second, the IGO may, by regulation, require prisoners to exhaust DOC grievance procedures where the procedures are (1) applicable to the grievance and (2) "reasonable and fair." *Id.* § 10-206(b). Pursuantly, the IGO has issued a regulation requiring grievants to "properly exhaust the [ARP]" "if the [ARP] applies to a particular situation or

occurrence." Md. Code Regs. 12.07.01.02D. In short, notwithstanding their interrelation, the IGO grievance procedure is at once legally and practically distinct from the ARP process.

In this case, Blake concedes that he failed to abide by both the ARP and IGO grievance processes. The PLRA thus dictates that the Court dismiss this action. In an attempt to avert dismissal, Blake maintains that the IIU's conduct of an investigation exempted him from complying with the ARP and IGO grievance processes.

Although Blake's argument is partially correct, it ultimately fails. True, the ARP process does not apply to complaints with "the same basis [as] an investigation under the authority of the . . . (IIU)." DCD 185-003.VI.N.4. In other words, if the IIU is investigating an incident with the same factual underpinning as a prisoner's complaint, the prisoner may not submit the complaint to the ARP process, including appeals to the Commissioner. *See id.*; *see also Davis v. Rouse et al.*,1:08-cv-03106-WDQ, Doc. No. 23-1, Ex. B-1 (Commissioner's dismissal of an appeal of a warden's dismissal of a complaint in light of an IIU investigation).

The DOC's directives do not, however, spare prisoners from satisfying the IGO grievance process. On the contrary, the DOC's 2007 Inmate Handbook provides that "[t]he IGO reviews grievances and complaints of inmates . . . after the inmate has exhausted institutional complaint procedures, such as the [ARP]." Md. Div. of Corr., Inmate Handbook 30 (2007), http://www.dpscs.state.md.us/publicinfo/publications/pdfs/2007_Inmate_Handbook.pdf.;      *cf.* DCD 185-003.VI.N.7 ("A final dismissal for procedural reasons . . . shall be treated as a substantive decision and the rationale for dismissal may be appealed by the inmate.")

Nor could the DOC's directives excuse prisoners from exhausting the IGO grievance process in this case's circumstances. As outlined above, Maryland law vests primary responsibility of fielding inmate grievances with the IGO. The IGO, in turn, has issued a

regulation requiring grievants to properly exhaust the ARP only if the ARP applies to a particular situation or occurrence. *See* Md. Code Regs. 12.07.01.02D. Here, in view of DCD 185-003.VI.N.4, the ARP does not apply to Blake's complaint. As a result, the IGO grievance process applies to Blake's complaint. Blake concedes that he failed to exhaust these procedures, and this concession is fatal to his cause.

Blake asserts that, on account of the IIU's investigation, Blake "had nothing to appeal, thus he did not have any 'grievance' that he could have pursed with the IGO." Doc. No. 87 at 7. This argument is an attempt to obfuscate clear statutory and regulatory mandates. To reiterate, Maryland law permits prisoners in DOC custody to file a grievance directly with the IGO, and the ARP does not apply to Blake's complaint. *See* Md. Code Ann., Corr. Servs. § 10-206(a); Md. Code Regs. 12.07.01.02D; *see also* Md. Code Regs. 12.07.01.05A (providing that prisoners must file grievances with the IGO within 30 days of the date on which the underlying incident occurred "[e]xcept as otherwise provided in this chapter"). In fact, the applicable regulations expressly contemplate the contemporaneous conduct of IIU and IGO proceedings based on the same underlying events. *See* Md. Code Regs. 12.11.01.05B. As the DOC's 2007 Inmate Handbook aptly states, "[t]he IGO reviews grievances and complaints of inmates . . . after the inmate has exhausted institutional complaint procedures, such as the [ARP]." Md. Div. of Corr., Inmate Handbook 30 (2007), http://www.dpscs.state.md.us/publicinfo/publications/pdfs/2007_Inmate_Handbook.pdf. Judged against these authorities, Blake's insistence that he had no appealable grievance is, at best, blithe.

Blake cites this Court's decision in *Thomas* for the proposition that the IIU's realization of an internal investigation excuses prisoners from their requirement to exhaust administrative remedies as an antecedent to instituting prison-condition lawsuits. *See Thomas*, 2010 WL

2779308, at *4. To support his reliance on *Thomas*, Blake notes that at least one other court in

the District of Maryland has reached the same conclusion. *See Bogues v. McAlpine*, Civil Action

No. CCB–11–463, 2011 WL 5974634, at *4 (D. Md. Nov. 28, 2011); *see also Williams v.*

*Shearin*, Civil No. L–10–1479, 2010 WL 5137820, at * 2 n.2 (D. Md. Dec. 10, 2010) (holding

that an inmate's failure to file an ARP complaint did not defeat his ability to proceed in federal

court, partly because of the convocation of an internal investigation).

These cases are unconvincing. The *Thomas* and *Bogues* courts came to the conclusion

that the commencement of an internal investigation precluded dismissal on failure to exhaust

grounds in view of DCD 185-003.VI.N.4. As spelled out above, however, DCD 185-003.VI.N.4

provides only that prisoners may not use the ARP process when the events underlying their

complaint are the subject of an IIU investigation; DCD 185-003.VI.N.4 has nothing to do with

the IGO grievance process. In retrospect, *Thomas*—as well as *Bogues*—may have inadequately

addressed this aspect of the pertinent statutes, regulations, and directives. For its part, *Williams*

does not cite any authority in reaching the conclusion that the commencement of an internal

investigation precludes dismissal for the failure to exhaust.

Nor does the realization of an internal investigation relieve prisoners from the PLRA's

exhaustion requirement as a matter of general statutory construction. Although the Fourth Circuit

has yet to address whether the implementation of an internal investigation excuses prisoners

from exhausting administrative remedies, the Sixth, Seventh, and Ninth Circuits have addressed

this very question. *See Pavey v. Conley*, 663 F.3d 899, 905–06 (7th Cir. 2011); *Panaro v. City of*

*North Las Vegas*, 432 F.3d 949, 953–54 (9th Cir. 2005); *Thomas v. Woolum*, 337 F.3d 720, 734

(6th Cir. 2003). Each of these Circuits has held that an internal investigation does not relieve

prisoners of the PLRA's exhaustion requirement. *See id.* These holdings are based on "the literal

command of the PLRA, which precludes an action by a prisoner 'until such available administrative remedies as are available are exhausted.'" *Panaro*, 432 F.3d at 953 (quoting 42 U.S.C. § 1997e(a)). In other words, "Section 1997e(a) is concerned with the 'remedies' that have been made available to prisoners." *Pavey*, 663 F.3d at 905. "An internal-affairs investigation may lead to disciplinary proceedings targeting the wayward employee but ordinarily does not offer a remedy to the prisoner who was on the receiving end of the employee's malfeasance." *Id.* (citations omitted). Furthermore, "even if the internal-affairs investigation could result in some relief for the prisoner, the Supreme Court has rejected any suggestion that prisoners are permitted to pick and choose how to present their concerns to prison officials." *Id.* at 905–06 (citing *Woodford v. Ngo*, 548 U.S. 81, 95 (2006)).

The preceding discussion demonstrates that Blake has failed to exhaust administrative remedies in accordance with the PLRA. Consequently, the Court dismisses and closes this action.

## IV.    CONCLUSION

For the foregoing reasons, the Court **DENIES** Blake's Motion to Strike and **GRANTS** Ross's Motion for Summary Judgment. A separate Order follows.

| | |
|---|---|
| _____May 10, 2012_____ | _____/s/_____ |
| Date | Alexander Williams, Jr. |
| | United States District Judge |