**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND
SOUTHERN DIVISION**

SHAIDON BLAKE,

     Plaintiff,

        v.                       Civil Action No. 8:09-cv-02367-AW

GARY MAYNARD *et al.*,

     Defendants.

---

**<u>MEMORANDUM OPINION</u>**

Plaintiff Shaidon Blake brings this action against Defendants Michael Ross and James Madigan. Plaintiff asserts § 1983 claims for excessive force and deliberate indifference. Pending is Plaintiff's Motion for Reconsideration. On November 2, 2012, the Court held a hearing on said Motion. For the reasons articulated herein, the Court **GRANTS IN PART AND DENIES IN PART** Plaintiff's Motion for Reconsideration.

**I.      FACTUAL AND PROCEDURAL BACKGROUND**

The Court extracts the following facts from its Memorandum Opinion of May 10, 2012 (May 2012 Opinion), updating them to reflect subsequent developments in the record. This case arises from a beating Plaintiff sustained at the hands of a prison guard. Plaintiff Shaidon Blake, a/k/a Shamvoy Smith, is an inmate of the Maryland Division of Correction (DOC). Defendants James Madigan and Michael Ross are prison guards and were involved in the series of events leading to the instant dispute. Although Blake sued other individuals in his initial Complaint, the Court has erstwhile dismissed them. *See* Doc. No. 32 at 8–9.

On June 21, 2007, Blake received a notice of infraction based on allegations that he interrupted the orderly use of the telephone in Maryland Reception, Diagnostic, and Classification Center (MRDCC) Unit 7C. In connection with this incident, Madigan and Ross went to Blake's cell, handcuffed him, and escorted him out of his cell. Ross held Blake by the arm and Blake offered no resistance. Ross and Blake proceeded to the concrete staircase that leads to the lower part of Unit 7C with Madigan trailing behind. The trio reached the staircase and started to descend, whereupon Madigan shoved Blake from behind. Ross thereupon told Madigan that he had Blake under control.

Eyewitness accounts diverge sharply at this point. In essence, Defendants contend that the trio stopped moving toward the segregation unit and Madigan "unexpectedly punched Mr. Blake in the face several times in quick succession." Doc. No. 94-1 at 6. In contrast, Blake asserts that there was a "clear buildup to the assault at issue." Doc. No. 96 at 4. After this alleged buildup, Blake contends that Madigan punched him in the face several times with a "fist clenched over a key ring." *Id.* Blake also asserts that there were intermittent pauses during the assault.

Madigan then ordered the hallway officer, Latia Woodard, to mace Blake, which she refused. Instead, Woodard issued a "Signal 13" code over the radio, thereby summoning the assistance of other correctional officers.

The Parties' stories diverge at this point as well. The Parties agree that, in one way or the other, Ross took Blake to the ground. Defendants assert that Ross and Madigan "attempted to bring Mr. Blake to the floor" and that the three tripped and fell during the process. Doc. No. 94-1 at 7. Ross's alleged motive in taking Blake to the floor was to "demonstrate control over Mr. Blake so that the other arriving officers would not continue to escalate the use

of force against Mr. Blake." *Id.* For his part, Blake insists that Madigan and Ross picked him up and slammed him violently to the ground on his head. Doc. No. 96 at 5. Blake further asserts that Ross "dropped his knee on Blake's chest." *Id.*

Thereafter, Blake was taken to the medical unit. Blake received a preliminary examination, after which he returned to his cell. The incident was referred to the Internal Investigative Unit (IIU) of the Department of Public Safety and Correctional Services (DPSCS). The IIU conducted an investigation and completed a comprehensive report. The IIU report concluded that, inter alia, Madigan used excessive force during the incident described above. Consequently, Madigan was charged with various violations, a process that culminated in his entering into a settlement agreement pursuant to which he resigned in lieu of being fired.

On September 8, 2009, Blake filed a pro se Complaint asserting a § 1983 claim based on Madigan's attack and the surrounding events. Doc. No. 1. On February 4, 2010, Ross, among others, filed a Motion to Dismiss or, in the Alternative, for Summary Judgment (Motion to Dismiss).[1] On September 9, 2010, the Court issued a Memorandum Opinion that, while granting the Motion in relation to other Defendants, denied it as to Ross. Doc. No. 32. In the September 2010 Opinion, the Court rejected the contention that Ross was entitled to qualified immunity, concluding that genuine issues of material fact existed concerning whether he had unconstitutionally failed to intervene. *See id.* at 7–8.

On August 2, 2011, Ross filed a Consent Motion for Leave to Amend his Answer to the Complaint (Consent Motion to Amend Answer). Doc. No. 66. Ross's proposed amended answer asserted some new defenses, including that Ross had failed to exhaust administrative remedies under the Prison Litigation Reform Act (PLRA). Later that month, despite having consented to

---

[1] Madigan was not in the case at this point. Madigan has since answered. Doc. No. 53. Madigan has not moved for summary judgment or otherwise sought to have the action dismissed.

Ross's amendment, Blake filed a Motion to Strike Certain of Ross's Affirmative Defenses (Motion to Strike Certain Defenses), arguing that Ross waived the right to raise them by failing to do so earlier in the proceeding. Doc. No. 74. Blake subsequently lodged an Amended Complaint via consent motion, thus mooting his Motion to Strike Certain Defenses. *See* Doc. Nos. 78-1, 85. Ross answered the Amended Complaint. Doc. No. 84. Ross's answer restates the affirmative defense of failing to exhaust administrative remedies under the PLRA.

On October 24, 2011, Blake filed a Motion to Strike Defendant Ross's Fifth Affirmative Defense (Motion to Strike). Doc. No. 87. In this Motion, as in the Motion to Strike Certain Defenses, Blake sought to strike Ross's PLRA defense on a waiver theory.

On January 9, 2012, Ross filed a Motion for Summary Judgment. Doc. No. 94. Ross pressed two primary arguments in this Motion: (1) that Blake failed to exhaust administrative remedies; and (2) that the evidence was insufficient to support Blake's § 1983 excessive force and deliberate indifference claims.

On May 10, 2012, the Court issued a Memorandum Opinion and Order (May 2012 Opinion) denying Blake's Motion to Strike and granting Ross's Motion for Summary Judgment. In granting Ross's Motion for Summary Judgment, the Court held that Blake failed to exhaust administrative remedies inasmuch as he failed to file a complaint with the Inmate Grievance Office (IGO). The Court also held that, as a matter of general statutory construction of the Prison Litigation Reform Act (PLRA), the DPSCS' internal investigation failed to justify Blake's failure to exhaust administrative remedies. In denying Blake's Motion to Strike, the Court carefully reviewed the record and determined that Ross properly raised the failure to exhaust defense in a responsive pleading and that Blake could show no prejudice because of Ross's somewhat belated assertion of the defense.

On June 4, 2012, Blake filed a Motion for Reconsideration of the Court's May 2012 Opinion. Doc. No. 101. Ross originally filed no response to this Motion. However, before ruling on this Motion, the Court deemed it advisable to schedule a hearing. Subsequently, Ross responded to the Motion, and it has become ripe. By and large, Blake's Motion for Reconsideration rehashes arguments that the Court rejected in its May 2012 Opinion.

The Motion for Reconsideration, however, does raise a few novel arguments. For instance, Blake asserts that the Court's decision prejudices him inasmuch as it portends to create a statute of limitations bar. Blake also contends that the Court's May 2012 Opinion was overbroad insofar as it applied to Madigan, who failed to move for summary judgment, failed to assert the failure to exhaust defense until the recent hearing, and whose liability has never seriously been in dispute.

## II.        STANDARD OF REVIEW

Blake seeks reconsideration of the Court's May 2012 Opinion under Rule 59(e) of the Federal Rules of Civil Procedure. "While the Rule itself provides no standard for when a district court may grant such a motion, courts interpreting Rule 59(e) have recognized three grounds for amending an earlier judgment: (1) to accommodate an intervening change in controlling law; (2) to account for new evidence not available at trial; or (3) to correct a clear error of law or prevent manifest injustice." *Hutchinson v. Staton*, 994 F.2d 1076, 1081 (4th Cir. 1993).  Only ground (3) is relevant to the instant Motion.

## III.       LEGAL ANALYSIS

### A.        Blake's Claims Against Madigan

Blake argues that the Court improperly dismissed his claims against Madigan because Madigan failed to raise the defense of failure to exhaust. Blake also argues that dismissal of his

claims against Madigan for failing to exhaust administrative remedies was improper because (1) Madigan did not move for summary judgment and (2) Madigan's liability is not seriously in dispute.

The Court agrees with Blake's first argument. The Court's May 2012 Opinion was overbroad in that it seemed to apply, sua sponte, Ross's failure to exhaust defense to Blake's claims against Madigan. Failure to exhaust administrative remedies is an affirmative defense for which Madigan bore the burden of proof. *Jones v. Bock*, 549 U.S. 199, 212 (2007); *Moore v. Bennette*, 517 F.3d 717, 725 (4th Cir. 2008) (citations omitted). Furthermore, "a party's failure to raise an affirmative defense in the appropriate pleading [usually] results in waiver . . . ." *Brinkley v. Harbour Recreation Club*, 180 F.3d 598, 612 (4th Cir. 1999). Additionally, the Fourth Circuit has held that, although district courts may raise the issue of exhaustion of administrative remedies under the PLRA sua sponte, "a district court cannot dismiss the complaint without first giving the inmate an opportunity to address the issue." *Anderson v. XYZ Corr. Health Servs., Inc.*, 407 F.3d 674, 682–83 (4th Cir. 2005).

In this case, Madigan failed to raise the failure to exhaust defense in his answer, failed to move for summary judgment, and failed to respond to Blake's Motion for Reconsideration. Indeed, Madigan failed to argue that Ross's failure to exhaust defense applied to him until the recent hearing. Therefore, Madigan waived the right to assert the failure to exhaust defense. Furthermore, as Madigan never raised the defense, it is hard to see how he carried the burden of proof. Moreover, even if sua sponte dismissal were otherwise proper, the Court did not give Blake the required notice.

For these reasons, the Court grants Blake's Motion for Reconsideration as to Madigan. The Court will reopen the case and allow Blake to proceed with his excessive force claim against Madigan. This disposition moots Blake's alternative argument.

**B.      Blake's Claims Against Ross**

Blake makes a series of arguments purporting to demonstrate that the Court erred in granting summary judgment in Ross's favor. The Court addresses these arguments one by one.

*1.       Whether Ross Waived the Right to Assert the Failure to Exhaust Defense*

Blake argues that the Court erred in its determination that Ross did not waive his right to assert the PLRA defense considering his somewhat belated raising of it. The Court rejects this argument for the reasons stated in its May 2012 Opinion. As noted therein, Ross properly raised the defense in a consent motion to amend his answer. Furthermore, Blake later filed a consent motion to amend his complaint, in response to which Ross again properly raised the PLRA defense.

The Court also determined in its May 2012 Opinion that Blake had failed to show prejudice sufficient to support a finding of waiver. Blake now argues that Ross's somewhat belated raising of the defense will prejudice him inasmuch as it will create a statute of limitations bar. Blake asserts that the statute of limitations will have expired by the time he exhausts administrative remedies and refiles his suit against Ross.

This argument fails for reasons at once procedural and substantive. In terms of procedure, Blake neglected to raise this argument in his opposition to Ross's Motion for Summary Judgment even though he easily could have envisioned this eventuality. Considering this omission, even if one assumes that the prospect of a time-bar is a relevant consideration in terms of prejudice, the Court's previous determination does not constitute a clear error of law.

As for substance, the purported prejudice of which Blake complains is prejudice of his own doing. Had Blake exhausted administrative remedies before filing suit, he would not face the prospect of having to exhaust administrative remedies and then refiling suit. Consequently, the prejudice Blake now faces is hardly different than the prejudice a plaintiff confronted with a meritorious PLRA defense inevitably faces. Furthermore, it is somewhat speculative to conclude that Blake would have managed to exhaust administrative remedies before the expiration of the statute of limitations had Ross raised said defense earlier.

Additionally, under well-settled Fourth Circuit precedent, plaintiffs may raise the PLRA defense on motion for summary judgment. *See Brinkley v. Harbour Recreation Club*, 180 F.3d 598, 612 (4th Cir. 1999). Likewise, courts may raise the issue of exhaustion of remedies on its own motion. *Anderson*, 407 F.3d at 682. Motions for summary judgment may be filed quite some time after the commencement of a case. So too may courts raise the issue of exhaustion at a later stage in the proceedings. Therefore, at least in some cases, Fourth Circuit precedent contemplates that dismissing inmate suits on failure to exhaust grounds may lead to a limitations bar.

For the foregoing reasons, the Court committed no error in determining that Ross did not waive his PLRA defense.

   2.   *Whether the DPSCS' Internal Investigation Excused Blake from Exhaustion*

Rehashing an argument already raised and rejected, Blake argues that the DPSCS' internal investigation excused him from filing an administrative grievance as a matter of general statutory construction. The Court rejects this argument for the reasons stated in its May 2012 Opinion. As the Court noted in its Opinion, the Sixth, Seventh, and Ninth Circuits have

addressed this very question and held that the commencement of an internal investigation does not relieve prisoners from the PLRSA's exhaustion requirement.

Blake responds that a few cases from the District of Maryland dictate a different result, including this Court's decision in *Thomas v. Bell*, Civil Action Nos. AW-08-2156, AW-08-3487, AW-09-1984, AW-09-2051, 2010 WL 2779308, at *3 (D. Md. July 7, 2010). *See also Bogues v. McAlpine*, Civil Action No. CCB–11–463, 2011 WL 5974634, at *4 (D. Md. Nov. 28, 2011); *Williams v. Shearin*, Civil No. L–10–1479, 2010 WL 5137820, at * 2 n.2 (D. Md. Dec. 10, 2010). However, these cases are unreported and are not as carefully reasoned as the Circuit authority mentioned above. Furthermore, *Thomas* and *Bogues* relied on a version of the Department of Correction Directives (DCD) that was not in effect at the time of the alleged assault. *See* DCD 185-003.VI.N.4 (Aug. 27, 2008). For its part, *Williams* does not cite any authority in reaching the conclusion that the commencement of an internal investigation precludes dismissal for the failure to exhaust.

Accordingly, Blake's counterarguments are not well-taken. The DPSCS' internal investigation did not excuse Blake from exhausting administrative remedies.

> 3.     *The Relationship, or Lack Thereof, of the IGO and ARP Processes*

Blake argues that the Court's reasoning that the IGO and ARP processes are legally distinct is unsound. As explained below, this is a mischaracterization of the Court's reasoning.

Maryland law implements an inmate grievance process that generally consists of three levels. The first level is called the Administrative Remedy Procedure (ARP). The ARP "is a formal way to resolve complaints or problems that an inmate has been unable to resolve informally." Md. Div. of Corr., Inmate Handbook 30 (2007), http://www.dpscs.state.md.us/publicinfo/publications/pdfs/2007_Inmate_Handbook.pdf. Usually,

the ARP process involves filing a request for administrative remedy with the warden of the institution in which the inmate is incarcerated. *See id.*; *Chase v. Peay*, 286 F. Supp. 2d 523, 529 n.10 (D. Md. 2003). The second step, for its part, entails appealing the warden's decision to the Commissioner of Correction. *See id.*; *Chase*, 286 F. Supp. 2d at 529 n.10. The third, and final, step occasions appealing the Commissioner's decision to the Inmate Grievance Office (IGO). *See id.*; *Chase*, 286 F. Supp. 2d at 529 n.10.

Blake argues that the Court's statement that the IGO process is "legally and practically distinct" from the ARP process contradicts its conclusion that prisoners must exhaust the IGO process when the ARP process is unavailable. Blake suggests that the IGO and ARP process are mutually exclusive such that the exhaustion of one obviates the need to exhaust the other.

Contrary to Blake's contentions, the Court expressly noted that the IGO grievance procedure is generally interrelated with the ARP process. The Court explained that the IGO process is the default process under Maryland law and applies to inmate grievances except when the ARP process is applicable. The Court then determined that, consistent with Blake's own contentions, the ARP process was inapplicable to his grievance because of the DPSCS' internal investigation. *See* Md. Code Ann., Corr. Servs. § 10-206(a); COMAR 12.07.01.02D. Therefore, this argument lacks merit.

4.      *Whether the Court Erred By Relying on the Wrong Version of a Directive*

In a footnote, Blake argues that the Court erred by relying on DOC directives that were not in effect when the underlying assault took place. Specifically, Blake observes that the Court relied on DCD 185-003.VI.N.4 for the proposition that the internal investigation removed Blake's complaint from the ARP process, with the result that he had to pursue the default IGO process. Blake further notes that the DOC issued this directive on August 27, 2008, which is

after the occurrence of the underlying assault. Blake concludes that the Court should reconsider its Opinion on this basis.

The Court disagrees. Although Blake correctly observes that DCD 185-003.VI.N.4 was not in effect when the assault took place, Plaintiff fails to explain how this excuses Blake's admitted failure to file a grievance with the warden or the IGO. Blake concedes that he was aware of the ARP process and was in possession of an inmate handbook detailing the process. Blake's only proffered excuse for his failure to file an ARP grievance is that, in his subjective belief, the DPSCS' internal investigation relieved him from this requirement.

Furthermore, the DOC directive that was in effect at the time of the assault appears to authorize inmates to use either the ARP or IGO process to file grievances based on the "[u]se of force." *Compare* DCD 185-002.IV.C.6, *with* DCD 185-002.IV.R (Feb. 15, 2005). Thus, the Court's misplaced reliance on DCD 185-003.VI.N.4 failed to prejudice Blake and the Court affirms its determination that Blake failed to exhaust administrative remedies.

> 5.    *Whether Blake's Failure to Exhaust Administrative Remedies Was Justified Due to Ambiguity in Maryland's Remedy Procedures*

The argument fails for essentially the same reasons as the prior one. There is very little, if any, ambiguity in Maryland's inmate grievance procedures. At the time of the assault, the DOC directives and inmate handbook gave Blake ample notice of his requirement to exhaust administrative remedies. Accordingly, this argument lacks merit.

6.      *Whether to Reopen and Stay the Case to Prevent a Statute of Limitations Bar*

Blake requests the Court to reopen and stay the case even if it otherwise denies his Motion for Reconsideration to obviate a time-bar.   The Court denies this request. Generally, courts lack discretion to stay prison-conditions suits under the PLRA. *See Boeh v. Horning*, Civil Action No. RDB-09-2365, 2010 WL 997056, at *3 (D. Md. Mar. 16, 2010). Furthermore, due to Blake's admitted failure to even attempt to exhaust administrative remedies, this case presents no overriding considerations of fairness. Therefore, the Court declines to reopen and stay the case.

7.      *Whether to Equitably Toll the Statute of Limitations*

Alternatively, Blake asks the Court to equitably toll the statute of limitations while he tries to exhaust administrative remedies. The Court denies this request as well. Generally, a prisoner "is entitled to equitable tolling only if he shows (1) that he has been pursuing his rights diligently, and (2) that some extraordinary circumstance stood in his way and prevented timely filing." *Holland v. Florida*, 130 S. Ct. 2549, 2562 (2010) (citation and internal quotation marks omitted). Here, Blake has not shown that he has pursued his rights diligently. Moreover, Blake has failed to identify an extraordinary circumstance that prevented him from exhausting administrative remedies. To reiterate, Blake has conceded that he decided not to exhaust remedies only because of his subjective belief that he faced no such requirement. Moreover, the applicable DOC directives and inmate handbook clearly spelled out Maryland's administrative remedy procedures. Accordingly, the Court declines to equitably toll the statute of limitations.

## IV.     CONCLUSION

For the foregoing reasons, the Court **GRANTS IN PART AND DENIES IN PART**

Blake's Motion for Reconsideration. A separate Order follows.

| | |
|---|---|
| November 14, 2012 | /s/ |
| Date | Alexander Williams, Jr.<br>United States District Judge |