IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND
SOUTHERN DIVISION

| | | |
|---|---|---|
| SHAIDON BLAKE, | * | |
| Plaintiff, | * | |
| v. | * | Case No. 09-cv-2367-AW |
| GARY MAYNARD, et al., | * | |
| Defendants. | * | |

**\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\***

## MEMORANDUM OPINION

Plaintiff Shaidon Blake filed suit against Defendant James Madigan and a host of others alleging the excessive use of force after Plaintiff was punched multiple times by Madigan. The suit was brought under 42 U.S.C. § 1983. At trial, the jury found Madigan liable and ordered that Madigan pay Plaintiff $50,000 in compensatory damages. There are currently two pending motions: Plaintiff's Motion for Attorney Fees, Doc. No. 138, and Madigan's Motion for New Trial or, in the Alternative, Motion to Alter or Amend the Judgment. Doc. No. 139. For the following reasons, the Court will **GRANT** Plaintiff's Motion for Attorney Fees and **DENY** Madigan's Motion for New Trial.

### I. FACTUAL AND PROCEDURAL BACKGROUND

Plaintiff Shaidon Blake is an inmate in the Maryland Department of Corrections. Blake accused James Madigan, a correctional officer, of punching him in the face several times with a "fist clenched over a key ring." Blake pursued a 42 U.S.C. § 1983 claim against Madigan, and

1

the case proceeded to trial. At trial, while Blake did not call a medical expert, Blake himself testified of the significant pain and suffering that he incurred as a result of Defendant's actions. He also offered several medical records. After hearing this evidence, the jury found Madigan liable on Blake's § 1983 claim, and awarded Blake $50,000 in compensatory damages.

The Parties have filed two post-verdict motions. The Plaintiff filed a Motion for Attorney Fees, Doc. No. 138, while the Defendant has filed a Motion for New Trial or, in the Alternative, Motion to Alter or Amend the Judgment, Doc. No. 139.

## II. ANALYSIS

**A. Plaintiff's Motion for Attorney Fees**

Under 42 U.S.C. § 1988(b), a prevailing plaintiff in a § 1983 suit may receive "a reasonable attorney's fee." "A court's award of reasonable attorneys' fees is the product of the reasonable hours expended multiplied by a reasonable hourly rate." *Sutton v. Smith*, No. Civ.A. AW–98–2111, 2001 WL 743201, at *1 (D. Md. June 26, 2001). This Court has considered twelve factors in determining the reasonableness of this product:

> (1) the time and labor expended; (2) the novelty and difficulty of the questions raised; (3) the skill required to properly perform the legal services rendered; (4) the attorney's opportunity costs in pressing the instant litigation; (5) the customary fee for like work; (6) the attorney's expectations at the outset of the litigation; (7) the time limitations imposed by the client or circumstances; (8) the amount in controversy and the results obtained; (9) the experience, reputation and ability of the attorney; (10) the undesirability of the case within the legal community in which the suit arose; (11) the nature and length of the professional relationship between attorney and client; and (12) attorneys' fees awards in similar cases.

*Id.*

The Prison Litigation Reform Act of 1995 (PLRA) places limitations on the attorney fees that can be awarded in cases brought by prisoners. The PLRA stipulates that the fee must have been "directly and reasonably incurred in proving an actual violation of the plaintiff's rights," and that "the amount of the fee is proportionately related to the court ordered relief for the violation." 42 U.S.C. § 1997e(d). Section 1997e further provides that an award of attorney fees may not exceed 150% of the judgment. 42 U.S.C. § 1997e(d)(2). Additionally, a calculation of attorney fees may not "be based on an hourly rate greater than 150 percent of the hourly rate established under 3006A of Title 18 for payment of court-appointed counsel." 42 U.S.C. § 1997e(d)(3). The current rate of compensation in the District of Maryland is $125 per hour. *See* CJA Hourly Rates, http://www.mdd.uscourts.gov/publications/forms/CJARates.pdf.

Plaintiff submits evidence that Mayer Brown attorneys worked 2,187 hours on this case at varying rates, all of which exceed the statutory maximum of $187.50 per hour. Doc. No. 138-2. In accruing these hours, Plaintiff argues that his counsel had to review years of medical evidence, take a number of depositions, consult a medical expert, and prepare for and conduct trial. Doc. No. 138-1, at 3. Multiplying the number of hours worked by the statutory maximum, Plaintiff submits that his attorneys would be entitled to $410,062.50 in fees were it not for the statutory cap on attorney fees at 150% of the judgment. Consequently, Plaintiff asks for the full $75,000, which is 150% of Plaintiff's $50,000 judgment. Noting the substantial amount of work performed by Plaintiff's counsel, the Court grants Plaintiff the statutory maximum of $75,000 in attorney fees.

The PLRA also provides that a Court must order that a portion of the attorney fees come out of the plaintiff's judgment. 42 U.S.C. § 1997e(d)(2). This portion may not exceed 25% of the judgment. *Id*. The Court may exercise discretion in determining the amount of the judgment that gets directed toward attorney fees. *See Sutton*, 2001 WL 743201, at *2. In the past, when the conduct of the officer has been egregious, this Court has directed $1.00 of the judgment toward attorney fees and has required the defendant to pay the remainder. *See id*.

Because of the egregious conduct of the Defendant, the Court orders that $1.00 of Plaintiff's attorney fees be taken from Plaintiff's judgment. At trial, the jury found that Defendant "maliciously and sadistically" violated Plaintiff's constitutional rights by punching him several times in the face and throwing him to the ground, causing his head to hit the concrete floor with substantial force. Such egregious behavior requires that only a nominal amount of Plaintiff's judgment be used to pay his attorney fees. *See Sutton*, 2001 WL 743201, at *2. Hence, the Court orders attorney fees to be paid to Plaintiff's counsel in the amount of $75,000, with $1.00 to be paid from Plaintiff's judgment, and the remainder to be paid by Defendant.

Defendant has a number of objections, all of which are meritless. First, Defendant contends that he is destitute and therefore cannot afford to pay Plaintiff's attorney fees. However, he cites no legal authority that uses the means of the defendant as a measuring stick for awarding attorney fees. Wealth, or lack thereof, of the defendant is not listed as one of the twelve factors used to determine a reasonable attorney fee. *See id.* at *1. Moreover, "plaintiffs in civil rights actions shall ordinarily receive fees and costs as long as no special circumstances render such an award unjust. The district court has limited discretion in not awarding fees to a prevailing party." *Clark v. Sims*, 894 F. Supp. 868, 870 (D. Md. 1995) (citations omitted). Defendant has asserted no special circumstance compelling the Court to exercise its limited discretion. For this same

reason, we also find no merit in Defendant's argument that his counsel spent less time and fewer resources preparing for trial. That his counsel was unwilling or unable to do as much as Plaintiff's counsel does not create a special circumstance rendering it unjust to award attorney fees to Plaintiff.

Third, Defendant argues that most of the time used by Plaintiff's attorneys was spent dealing with claims against defendants other than Madigan. However, by the time Mayer Brown was appointed, all defendants other than Madigan and Michael Ross had been dismissed from the case. Doc. Nos. 3, 33, 38. Plaintiff points out that much of Mayer Brown's work was related to factual discovery, and the factual discovery performed to pursue the case against Madigan is largely indistinguishable from the factual discovery taken to pursue the case against Ross. Moreover, because Ross was dismissed from the case prior to trial, all of Mayer Brown's trial preparation was focused solely on the case against Madigan. However, as the Fourth Circuit has explained,

> It is often quite difficult . . . to separate the hours worked "on a claim-by-claim basis" when "plaintiff's claims for relief . . . involve a common core of facts or . . . [are] based on related legal theories." When this is the case, the chief consideration becomes "the significance of the overall relief obtained by the plaintiff in relation to the hours reasonably expended on the litigation." When the results have been "excellent," the award should encompass "all hours reasonably expended on the litigation."

*Knussman v. Maryland*, 73 F. App'x 608, 614 (4th Cir. 2003) (quoting *Hensley v. Eckerhart*, 461 U.S. 424, 435–36 (1983)). There is no dispute that Plaintiff received excellent results, and Defendant has put forward no evidence or argument that Plaintiff's counsel acted unreasonably. Hence, the Court declines to lower its award of attorney fees to Plaintiff.

Fourth, Defendant asserts that Madigan's cooperation made it easy for Plaintiff to prevail and helped the trial run smoothly. That the costs of the litigation would have been even higher

had Defendant not cooperated does not give the Court a reason to deny Plaintiff attorney fees for the costs that were actually incurred. Moreover, even if the Court accepted Defendant's arguments as factually true, they would not justify a reduction in the attorney fees owed to Plaintiff. Plaintiff's attorney fees, using the maximum statutory rate, were over $400,000; Plaintiff is seeking to recover only a fraction of that amount. Even accounting for Defendant's financial circumstances and cooperation, and the possibility that time was spent pursuing litigation against other defendants, the Court would not reduce Plaintiff's attorney fees below the $75,000 threshold.

### 2. Defendant's Motion for New Trial or, in the Alternative, Motion to Alter or Amend the Judgment

Defendant has filed a motion asking the Court to amend the judgment and impose a verdict of nominal damages to the Plaintiff or, in the alternative, to grant a new trial. Doc. No. 139. The motion focuses entirely on the fact that the Plaintiff did not call a medical expert to demonstrate that the Defendant's conduct caused Plaintiff's injury. For the sake of clarity and exhaustion, the Court will presume that Defendant is moving both for a new trial under Rule 59 and, in the alternative, for a judgment as a matter of law pursuant to Rule 50.

Defendant's motion fails on the merits.[1] Under Rule 50, the Court must enter judgment for Defendant if "a reasonable jury would not have a legally sufficient evidentiary basis to find for" Plaintiff. Fed. R. Civ. P. 50(a)(1). "In ruling on a motion for judgment as a matter of law, the trial court should consider the record as a whole viewing the evidence presented in the light most favorable to the party against whom the motion is made." *Bostron v. Apfel*, 104 F. Supp. 2d 548, 551 (D. Md. 2000). "The court must draw all reasonable inferences in the nonmovant's

---

[1] Plaintiff argues that Defendant did not properly preserve this motion. The Court, absent a full trial transcript, is not in a position to evaluate this argument. Nonetheless, the Court need not evaluate Defendant's preservation of the motion as the motion fails on the merits.

6

favor without weighing the evidence or assessing the witness' credibility." *Pathways Psychosocial v. Town of Leonardtown, Md*, 223 F. Supp. 2d 699, 706 (D. Md. 2002).

On the other hand, under Rule 59,

> a district court must[] set aside the verdict and grant a new trial if . . . (1) the verdict is against the clear weight of the evidence, or (2) is based upon evidence which is false, or (3) will result in a miscarriage of justice, even though there may be substantial evidence which would prevent the direction of a verdict.

*Id*. In applying this standard, "[c]ourts do not grant new trials unless it is reasonably clear that prejudicial error has crept into the record or that substantial justice has not been done." *Id*. (alteration in original) (internal quotation marks omitted). "In general reconsideration of a judgment after its entry is an extraordinary remedy which should be used sparingly." *Pac. Ins. Co. v. Am. Nat. Fire Ins. Co.*, 148 F.3d 396, 403 (4th Cir. 1998) (citation and internal quotation marks omitted).

The Defendant's Motion fails under both Rule 50's "legally sufficient evidentiary basis" standard and Rule 59's "clear weight of the evidence" standard. The jury had more than sufficient evidence to conclude that Plaintiff was entitled to $50,000 in damages. "Compensatory damages may include not only out-of-pocket loss and other monetary harms, but also such injuries as impairment of reputation . . . , personal humiliation, and mental anguish and suffering." *Memphis Cmty. Sch. Dist. v. Stachura*, 477 U.S. 299, 307 (1986) (citation and internal quotation marks omitted). Here, Plaintiff provided testimony of his suffering, explaining that his "face was swollen up from being hit with a metal key chain like with the effect of brass knuckles." Doc. No. 142, at 74:6-10. He also explained that he suffered from headaches after the beating. *Id*. Further, Plaintiff testified that he was constantly in pain for two weeks after the incident and that he still has headaches and pain to this day. *Id*. at 78:8-11, 81:3-6. Moreover, he

7

explained that he has complained of headaches at every correctional facility he has been to, and that he was prescribed Neurontin to counteract the headaches. *Id.* at 131:25-135:22. While he had been prescribed Neurontin before, he testified that he was prescribed much higher doses after Madigan's attack. *Id.* Plaintiff testified that he is currently taking the highest dosage of Neurontin that he has ever received. *Id.* Finally, Plaintiff submitted several exhibits of medical records detailing the pain he experienced after Madigan's attack. *See* Doc. No. 128, Plaintiff's Exhibit List.

Defendant argues that this evidence is insufficient as a matter of law because Plaintiff did not call a medical expert to explain that his injuries were linked to Defendant's actions. However, no such expert was required:

> There are many occasions where the causal connection between a defendant's negligence and a disability claimed by a plaintiff does not need to be established by expert testimony. This is particularly true when the disability develops coincidentally with, or within a reasonable time after, the negligent act, or where the causal connection is clearly apparent from the illness itself and the circumstances surrounding it, or where the cause of the injury relates to matters of common experience, knowledge or observation.

*Osunde v. Lewis*, 281 F.R.D. 250, 261 (D. Md. 2012) (citations and quotation marks omitted). Here, Plaintiff's testimony indicates that he suffered from pain and headaches after he was repeatedly struck on the head by Defendant. It is plain to this Court that the "causal connection is clearly apparent" from Plaintiff's injury. Moreover, suffering from significant pain and headaches after being repeatedly struck in the head is so obvious that it can be considered a matter of common experience, knowledge, or observation. Hence, no medical testimony was necessary to establish the causal link between Defendant's acts and Plaintiff's injury.

The lack of medical testimony offered by Plaintiff is the sole basis for Defendant's motion. Because this argument is meritless, the Court will deny Defendant's motion. The Court

is satisfied that Plaintiff's testimony and medical records demonstrate that the verdict was not against the weight of the evidence under Rule 59, and that they provided a legally sufficient basis for the verdict under Rule 50.

### III. CONCLUSION

For the foregoing reasons, Plaintiff's Motion for Attorney Fees will be **GRANTED**, and Defendant's Motion for New Trial or, in the Alternative, Motion to Alter or Amend the Judgment will be **DENIED**. A separate Order follows.

| | |
|---|---|
| July 10, 2013 | /s/ |
| Date | Alexander Williams, Jr. |
| | United States District Judge |